IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY J. STANCEU, SENIOR JUDGE

| | |
|---|---|
| YAMA RIBBONS AND BOWS CO., LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant. ) | Court No. 21-00402 |

**DEFENDANT'S CORRECTED RESPONSE TO
COMMENTS ON REMAND REDETERMINATION**

|  |  |
|---|---|
|  | BRIAN M. BOYNTON <br> Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY <br> Director |
| OF COUNSEL <br> LESLIE M. LEWIS <br> Attorney <br> Office of the Chief Counsel <br>   For Trade Enforcement and Compliance <br> U.S. Department of Commerce <br> Washington, D.C. | KARA M. WESTERCAMP <br> Trial Attorney <br> U.S. Department of Justice <br> Commercial Litigation Branch <br> P.O. Box 480 <br> Ben Franklin Station <br> Washington, D.C.  20044 <br> Tel:  (202) 305-7571 <br> Fax: (202) 514-8264 <br> Email: kara.m.westercamp@usdoj.gov |
| December 11, 2023 | *Attorneys for Defendant United States* |

# **TABLE OF CONTENTS**

**PAGE**

BACKGROUND ..................................................................................................................2

    I.       Administrative Determination Under Review And Remand Order........................ 2

    II.      Remand Results ........................................................................................................2

ARGUMENT ......................................................................................................................5

    I.       Standard Of Review................................................................................................5

    II.      The Court Should Sustain Commerce's Remand Results Regarding The EBCP Because It Complies With The Court's Remand Order..........................................5

    III.    Commerce's Determination Regarding The Provisions Of Synthetic Yarn And Caustic Soda For LTAR Are In Compliance With The Court's Remand Order ..................................................................................................................................6

           A.     Yama Waived Its Ability To Challenge Commerce's Synthetic Yarn And Caustic Soda LTAR Determination ..............................................................6

           B.     Commerce's Determination That The Provisions Of Synthetic Yarn And Caustic Soda For LTAR Are Countervailable Subsidies Is Supported By Substantial Evidence And In Accordance With Law .................................7

CONCLUSION ................................................................................................................11

## **TABLE OF AUTHORITIES**

**CASES**            **PAGE(S)**

*AL Tech Specialty Steel Corp v. United States*,
    366 F. Supp. 2d 1236 (Ct. Int'l Trade 2005) ....................................................................... 7

*MacLean-Fogg Co. v. United States*,
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ....................................................................... 5

*POSCO v. United States*,
    335 F. Supp. 3d 1283 (Ct. Int'l Trade 2018) ....................................................................... 7

*SMA Surfaces, Inc. v. United States*,
    Consol. Ct. No. 21-00399, 2023 WL 6142127 (Ct. Int'l Trade Sept. 20, 2013) ................ 7

*Yama Ribbons & Bows Co. v. United States*,
    653 F. Supp. 3d 1314  (Ct. Int'l Trade 2023) ............................................................ passim

**STATUTE**

19 U.S.C. §1677 ............................................................................................................... passim

**REGULATIONS**

19 C.F.R. § 351.511 ..................................................................................................................... 8

**OTHER AUTHORITIES**

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*,
    73 Fed. Reg. 31,966 (Dep't of Commerce June 5, 2008) ................................................ 11

*Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China*,
    86 Fed. Reg. 40,462 (Dep't of Commerce July 28, 2021) ............................................ 1, 2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

|  |  |  |
|---|---|---|
| YAMA RIBBONS & BOWS CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 21-00402 |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S CORRECTED RESPONSE TO COMMENTS
ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff Yama Ribbons & Bows Co., Ltd. (Yama), ECF No. 49, concerning the United States Department of Commerce's final results of redetermination filed in accordance with this Court's decision and remand order in *Yama Ribbon and Bows Co. v. United States*, 653 F. Supp. 3d 1314 (Ct. Int'l Trade 2023). *See* Final Results of Redetermination Pursuant to Court Remand, ECF No. 47, Oct. 24, 2023 (Remand Results). The Court should sustain Commerce's remand results because they comply with the remand opinion, and are supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

**I.  Administrative Determination Under Review And Remand Order**

The administrative determination under review is the final results of the 2018 administrative review of the countervailing duty order covering narrow woven ribbons with woven selvedge from the People's Republic of China. *See Narrow Woven Ribbons with Woven*

*Selvedge from the People's Republic from China*, 86 Fed. Reg. 40462 (Dep't of Commerce July 28, 2021) (Final Results), and accompanying Issues and Decision Memorandum (IDM) (P.R. 174).[1]  In the final results, Commerce applied an adverse inference in selecting from among the facts available, based on the Government of China's (GOC) noncooperation, in determining both the countervailability of the Export Buyer's Credit Program (EBCP) and the provisions of synthetic yarn and caustic soda for less-than-adequate remuneration (LTAR).  *Id*.

On August 25, 2023, the Court remanded Commerce's application of an adverse inference to the EBCP, ordering Commerce to reconsider and reach a new determination "on the basis of the existing record and reach a new determination that is in accordance with this Opinion and Order."  *Yama*, 653 F. Supp. 3d at 1326-27.  To wit, the Court held that the GOC's "failure to provide a list of correspondent banks," could not result in an adverse inference because "{t}he absence from the record of that list did not affect {Commerce's} ability to determine, or to conduct a verification on, whether Yama benefited from the EBCP."  *Id.* at 1324.

Turning to the LTAR issues, the Court permitted Commerce to add the 2015 new subsidy allegation (2015 NSA) document to the record, which Commerce had relied on in making its specificity determinations as to synthetic yarn and caustic soda.  *Id*. at 1328.  The Court ordered Commerce to reconsider its countervailability determinations in their entirety based on the supplemented record and Yama's comments, and then Yama "will have the opportunity to comment on the redetermination upon remand that Commerce submits to the court."  *Id*.

## II.      Remand Results

---

[1] "P.R." refers to the documents in the public administrative record. "P.R.R." refers to the documents in the public remand record.

Consistent with the Court's order, on September 7, 2023, Commerce supplemented the record and allowed Yama to submit comments. *See* Supplementation to the Record Memorandum (Dep't of Commerce Sept. 7, 2023) (P.R.R. 1); 2015 NSA (Feb. 7, 2017) (P.R.R. 2–9). A week later, Yama timely submitted comments on the new record information. Yama Comments on 2015 NSA (Sept. 14, 2023) (P.R.R. 10).

Yama argued that the new information, that is, the 2015 NSA, does not "support a finding of countervailable subsidies" because it omits the following information: (1) the name of the government authority granting the subsidy; (2) the name of legislation granting the subsidy; (3) a list of specific industries named by the Chinese government agency or legislation which "expressly limits access to the subsidy;" (4) a list of "objective criteria" imposed by a specific Chinese agency or legislation; (5) information that the subsidy is "specific as a matter of fact;" and (6) the diversification of economic activities within the jurisdiction of the GOC agency implementing the specific LTAR or how long the subsidy has been in place. *Id.* at 2-3.

On October 2, 2023, Commerce issued draft remand results and specifically addressed Yama's comments. *See* Draft Remand Results at 8-20 (P.R.R. 11). Commerce explained that it reconsidered its decision to apply an adverse inference in evaluating use of the EBCP and determined, under respectful protest, that the EBCP was not used by Yama. *Id.* at 2. As such, Commerce revised Yama's overall subsidy rate accordingly. *Id.* Commerce also reconsidered its determinations for the provisions of synthetic yarn and caustic soda for LTAR in the entirety, based on the supplemented record, and continued to find that they are specific and that Yama benefited from these programs during the period of review. *Id.* at 8-20. Lastly, Commerce reminded Yama that it could provide comments on the draft results to be addressed by Commerce in the final remand results for submission to the Court. *Id.* at 21. However, Yama

3

did not submit any comments in response to the draft remand results. As a result, Commerce made no changes to the draft remand results. Accordingly, the final remand results include Commerce's unchallenged responses to Yama's prior comments to the newly placed record information, that is, the 2015 NSA.

In the final remand results, as to market distortion, Commerce determined that "the GOC has an electronic system available to it to gather the industry-specific information Commerce requested, including the GOC's minority ownership interests in companies producing synthetic yarn and caustic soda, but elected not to provide Commerce this information." Remand Results at 12. Commerce also continued to find that private companies which supplied Yama with synthetic yarn and caustic soda are "authorities" because the GOC failed to provide the information requested of (and available to) it regarding government involvement in input suppliers' management and operations for Commerce's analysis under 19 U.S.C. 1677(5)(B). *Id*. at 12-14. Commerce explained that the "fact that Yama's input suppliers are privately-owned companies is not dispositive to {its} determination regarding whether they are 'authorities' because of the potential for the GOC or {the Chinese Communist Party's (CCP)} involvement in these companies." *Id.* at 15-16 (explaining that "public information demonstrates that the CCP exerts significant control over activities in China such that the CCP can properly be considered part of the government structure in China for purposes of this analysis."). Commerce continued to apply an adverse inference, finding that Yama's privately-owned input suppliers are "authorities." *Id*. at 18.

Finally, regarding specificity, Commerce explained that the GOC had failed to provide the requested information and, therefore, found that "the information on the record is incomplete regarding whether these subsidies are specific{.}" *Id.* at 19. And, as a result, Commerce

continued to rely on facts otherwise available because the necessary information was not on the record and that the GOC failed to cooperate to the best of its ability in providing the requested information. *Id.* Commerce also explained that it disagreed with Yama that the 2015 NSA does not support Commerce's finding that the provisions of synthetic yarn and caustic soda for LTAR are countervailable subsidies because it "supports a finding that the provision of these inputs for LTAR is *de facto* specific." *Id.* at 9.

Therefore, Commerce continued to find that the synthetic yarn and caustic soda markets are significantly distorted by the GOC's involvement, and that privately-owned input suppliers of synthetic yarn and caustic soda are "authorities" within the meaning of 19 U.S.C. § 1677(5)(B). *Id.* at 20. Commerce also continued to find that the provisions of these inputs are *de facto* specific, and that "the provision of synthetic yarn and caustic soda for LTAR programs conferred countervailable subsidies to Yama during the {period of review}." *Id.*

## ARGUMENT

### I. Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

### II. The Court Should Sustain Commerce's Remand Results Regarding The EBCP Because It Complies With The Court's Remand Order

Under respectful protest, Commerce complied with the Court's order and found that Yama did not use the EBCP during the period of review. *See* Remand Results at 7-8. Consequently, Commerce excluded the EBCP subsidy rate of 10.54 percent in the remand results. Remand Results at 21. Because no party has submitted comments on this issue and

Commerce complied with the Court's order, the Court should sustain this determination.  *See id.*; *see also Yama*, 653 F. Supp. 3d at 1324-27.

**III.     Commerce's Determination Regarding The Provisions of Synthetic Yarn And Caustic Soda For LTAR Are In Compliance With The Court's Remand Order**

Commerce's remand results comply with the Court's remand order with respect to the synthetic yarn and caustic soda for LTAR and are supported by substantial evidence and in accordance with law.  Accordingly, the Court should sustain Commerce's remand results.

**A.     Yama Waived Its Ability To Challenge Commerce's Synthetic Yarn And Caustic Soda LTAR Determination**

As an overarching matter, while Yama states that it "stands by" its prior submissions, that is, its briefing filed *before* the Court had remanded this issue to Commerce, each of these submissions plainly predated Commerce's draft and final remand results submitted in this case.  Yama Cmts. at 2.  In other words, Yama never commented on Commerce's draft remand results, after Commerce placed the 2015 NSA on the remand record.  *See id.*  And, more saliently, Yama has never commented on Commerce's final remand results before the Court.  *See id.*  Yama fails to support its assertion that its prior submissions somehow addressed actions that Commerce had yet to take, or that this Court's rules countenance a party incorporating by reference irrelevant briefing that necessarily fails to address actions that Commerce has yet to take.

Such a lackadaisical approach is inconsistent with the Court's remand order where it expressly explained that Yama should have an opportunity to comment on the 2015 NSA *after* it was placed on the record and again, in response to the draft remand results.  *See Yama*, 653 F. Supp. 3d at 1328 ("To avoid a piecemeal approach, Commerce shall reconsider its LTAR determinations for these two inputs, in the entirety, based on the supplemented record and the comments plaintiff submits.  Plaintiff then will have the opportunity to comment on the

6

redetermination upon remand that Commerce submits to the court."). Accordingly, the Court should decline to consider Yama's arguments with respect to the synthetic yarn and caustic soda LTAR because it has waived its ability to raise these arguments.

"{I}t is black letter law that—to properly preserve an issue for appeal—a party generally must first exhaust its remedies by making its argument before the agency, then brief that argument before the trial court. Arguments that are not properly preserved are waived." *AL Tech Specialty Steel Corp. v. United States*, 366 F. Supp. 2d 1236, 1245 (Ct. Int'l Trade 2005) (citation omitted). Indeed, even if an argument had been raised to Commerce, which it was not, the failure to raise that argument before the Court on remand generally constitutes waiver. *See POSCO v. United States*, 335 F. Supp. 3d 1283, 1287 (Ct. Int'l Trade 2018). Put another way, the "argument must be developed for judicial review; perfunctory statements or summary incorporation of prior arguments cannot preserve an issue." *SMA Surfaces, Inc. v. United States*, Consol. Ct. No. 21-00399, 2023 WL 6142127, at *3 (Ct. Int'l Trade Sept. 20, 2023) (holding arguments waived where party incorporated draft remand comments and "did not brief any arguments specific to Commerce's analysis and explanation as articulated in the Final Remand Redetermination.").

Here, by entirely failing to make *any* arguments to this Court and incorporating by general reference its prior briefs absent any consideration of Commerce's draft or final remand results, the Court should find that Yama has waived any objections to Commerce's remand results with respect to this issue. *See id.*

      **B.**    **Commerce's Determination That The Provisions Of Synthetic Yarn And Caustic Soda For LTAR Are Countervailable Subsidies Is Supported By Substantial Evidence And In Accordance With Law**

In the alternative, Commerce's determination that the provisions of synthetic yarn and caustic soda for LTAR are countervailable subsidies is supported by substantial evidence and in accordance with law. Remand Results at 9-20. In the remand results, Commerce explained that for the LTAR subsidies at issue, consistent with 19 C.F.R. § 351.511, a countervailable subsidy exists when an authority provides a good for LTAR and when the provision of that subsidy is specific. *Id.* at 9. An authority can provide a subsidy by providing a good at LTAR to an enterprise, industry or group thereof, notwithstanding whether the government intended to subsidize the recipient or establish a program to do so. *Id*. Under 19 U.S.C. § 1677(5)(A) and (B), the inquiries are whether the authority provided the respondent with a subsidy, whether the subsidy is specific, and whether a benefit is thereby conferred. *Id.*

Accordingly, as detailed in the remand results, during the administrative review, Commerce sought information on whether the synthetic yarn and caustic soda producers are authorities, whether prices of the inputs are made at prices that are for less-than-adequate remuneration, and whether the subsidy provided is limited to an enterprise, industry, or group thereof. *Id*. Commerce explained that the GOC did not cooperate with its information requests and, thus, that the record supports the application of an adverse inference to fill the record gaps caused by the GOC's noncooperation for its findings of distortion in the synthetic yarn and caustic soda markets, that Yama's input suppliers are "authorities", and that the LTAR input subsidies are specific. *Id*. at 10-19.

As to whether Yama's private suppliers of the inputs are authorities, Commerce explained that it was necessary to have information about the "ownership structure and basic registration information for each of Yama's privately-owned input suppliers" because it understood that the "CCP exerts significant control over economic activities in China." *Id.* at 13-

8

14. Although the GOC claimed that it does not have oversight or authority over private companies, Commerce explained its findings that the GOC was able to obtain the requested information and that the GOC is in the best position to "answer questions about individuals who hold positions in the GOC or are members of the CCP." *Id*. at 15.  And even though Yama had earlier argued in its motion for judgment on the administrative record before the Court, Commerce explained that while "Yama provided certifications that the senior managers of certain of its input suppliers are not GOC officials or members of the CCP, Yama failed to provide this information for *all* of its input suppliers, and it did not provide such information for the individual owners or board members of any of these companies." *Id.* at 15 (emphasis in original).  In other words, the GOC's noncooperation resulted in a gap of record information, which is necessary for Commerce's determination that Yama's input suppliers are independent from government control, and which could not be overcome by Yama's partial information.  *Id*. at 15-18.  Relatedly, Commerce explained that "the GOC has simply failed to respond to Commerce's questions and explain the purpose of CCP committees, which might shed light on the purpose, meaning, and role of these committees in private enterprises as well as state-invested enterprises." *Id.* at 15-17.  Thus, Commerce continued to rely on adverse facts available, finding that Yama's privately-owned input suppliers are "authorities." *Id*. at 18.

Further, Commerce requested necessary information from the GOC to determine whether the input transaction prices are significantly distorted by the government's involvement in the input markets (*i.e.*, to determine whether actual transaction prices can serve as LTAR benchmarks). *Id*. at 3, 10.  However, as explained in the remand results, the GOC failed to provide information pertaining to government ownership in companies comprising the synthetic yarn and caustic soda industries. *Id*. at 12-13.  Commerce also explained its finding that "the

9

GOC has an electronic system available to it to gather the industry-specific information Commerce requested, including the GOC's minority ownership interests in companies producing synthetic yarn and caustic soda, but elected not to provide Commerce this information." *Id.* at 11-12.  Therefore, Commerce relied on an adverse inference, finding that Chinese prices from transactions involving Chinese buyers and sellers are significantly distorted by the involvement of the GOC, and accordingly, those prices could not be used as LTAR benchmarks.  *Id*. at 12.

With respect to specificity, Commerce explained that the provisions of synthetic yarn and caustic soda for LTAR are not *de jure* specific.  *Id*. at 9.  However, Commerce determined that, in the absence of the requested specificity information from the GOC, the 2015 NSA information—which Commerce used to initiate an investigation of the provision of synthetic yarn and caustic soda for LTAR in the underlying proceeding—supports a finding of *de facto* specificity.  *Id*.; *see also* 19 U.S.C. § 1677(5A)(D)(iii)(I) (a subsidy is *de facto* specific where the actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number).  Further, Commerce explained that, for the provision of synthetic yarn for LTAR, in the 2015 NSA, the petitioner provided information supporting a finding that synthetic yarn is used solely by the textiles industry in China.  *See* Remand Results at 19 n.71(citing 2015 NSA Exhibit II-P (including informational material on yarn including its use and how it is made, raw materials, manufacture, history, use, processing, parts, industry, machinery, *etc*.)) (P.R.R. 7); 2015 NSA Exhibit II at 33 (explaining record evidence pursuant to the specificity elements). Similarly, for the provision of caustic soda for LTAR, in the 2015 NSA, the petitioner provided information indicating that caustic soda is used by only a limited number of industries (*i.e.*, chemicals, pulp and paper, aluminum, food, water treatment, and textiles) in China.  *See* Remand Results at 20 n.73 (citing 2015 NSA Exhibit III-H (including informational material on caustic

10

soda, *i.e.*, "sodium hydroxide," including the industries which use the product according to BASF Chemical Company)); 2015 NSA Exhibit III at 33 (explaining record evidence pursuant to the specificity elements).

For example, in past cases, Commerce has found that when use of an input was limited to eight industries, these industries were limited in number in China. *See, e.g.*, *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 31,966 (Dep't of Commerce June 5, 2008) (final LTFV determ.), and accompanying IDM at cmt. 7; *see also* Remand Results at 19-20. Thus, Commerce continued to find that the provisions of synthetic yarn and caustic soda for LTAR are *de facto* specific under 19 U.S.C. 1677(5A)(D)(iii)(I) based on the supplemented record. *See* Remand Results at 19-20.

## CONCLUSION

For these reasons, this Court should sustain Commerce's remand results, and enter final judgment in favor of the United States.

                Respectfully submitted,

                BRIAN M. BOYNTON
                Principal Deputy Assistant Attorney General

                */s/ Patricia M. McCarthy*
                PATRICIA M. McCARTHY
                Director

| | |
|---|---|
| | */s/* Kara M. Westercamp |
| OF COUNSEL: | KARA M. WESTERCAMP |
| LESLIE M. LEWIS | Trial Attorney |
| Attorney | U.S. Department of Justice |
| Office of the Chief Counsel | Commercial Litigation Branch |
| for Trade Enforcement & Compliance | P.O. Box 480 |
| U.S. Department of Commerce | Ben Franklin Station |
| Washington, D.C. 20230 | Washington, D.C. 20044 |
| | Tel: (202) 305-7571 |
| | E-mail: Kara.M.Westercamp@usdoj.gov |
| December 11, 2023 | *Attorneys for Defendant United States* |

11

## CERTIFICATE OF COMPLIANCE

      I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 3,096 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

s/ Kara M. Westercamp

KARA M. WESTERCAMP

Trial Attorney

Department of Justice

Civil Division

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

|  |  |
|---|---|
| YAMA RIBBONS & BOWS CO., LTD., )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>UNITED STATES, )<br>  )<br>Defendant. )<br>  ) | Court No. 21-00402 |

**<u>ORDER</u>**

Upon consideration of plaintiff's comments regarding the remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained in its entirety.

Dated: _____, 2023          _____
          New York, New York                                                              JUDGE